# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATHAN HICKS, et al., | Case No. 1:17-cv-01187-LJO-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS MOTION TO DISMISS |
| v. | |
| COUNTY OF STANISLAUS, et al., | (ECF Nos.9, 13, 14) |
| Defendants. | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Plaintiffs Athan Hicks and Kirk Robbins ("Plaintiffs") filed a civil rights complaint in this action pursuant to 42 U.S.C. § 1983 on September 4, 2017. Currently before the Court is Defendants County of Stanislaus ("County") and Christopher Gallo's motion to dismiss which was referred to a United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. (ECF Nos. 9, 10.) On January 10, 2018, the Court found the matter suitable for decision without oral argument. Having considered the the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following findings and recommendations.

**I.**

**BACKGROUND**

On September 4, 2017, Plaintiffs filed a complaint in this action. (ECF No. 1.) On October 12, 2017, Plaintiffs filed a first amended complaint alleging an unreasonable search under the Fourth Amendment against Defendant Gallo and a municipal liability claim against the

1

1 County.¹ (ECF No. 4.)

On December 8, 2017, Defendants filed a motion to dismiss the first amended complaint. (ECF No. 9.) Plaintiffs filed an opposition on January 2, 2018. (ECF No. 13.) On January 3, 2018, Defendants filed a reply. (ECF No. 14.)

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The pleading standard under Rule 8 of the Federal Rules of Civil Procedure does not require " 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair

---

¹ Plaintiffs filed an identical first amended complaint on October 13, 2017 which was disregarded. (ECF No. 7.)

to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Starr, 652 F.3d at 1216. "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988)).

### III.

### FIRST AMENDED COMPLAINT ALLEGATIONS

Plaintiffs are residents of Keys, California. (First Am. Compl. ("FAC") ¶ 1, ECF No. 4.) Plaintiffs were illegally searched and detained causing property damage and mental and emotional distress. (Id.) Defendant Joseph Gallo is employed as a deputy sheriff for the Stanislaus County Sheriff's Office and is a member of the "Sting Unit." (FAC ¶ 6.)

Stanislaus County Sheriff deputies who make up the sting unit have promised that Plaintiff Robbins will live the rest of his life in prison. (FAC ¶ 9.) Therefore, they consistently harass Plaintiffs Robbins and Hicks by detaining them and searching their residence without probable cause or a warrant. (Id.)

Around August of 2016, Plaintiff Robbins was a passenger in a vehicle being driven by a friend, Tony Perez. (FAC ¶ 10.) Deputies approached the vehicle with guns drawn, grabbed Plaintiff Robbins and dragged him from his seat, slammed him into the vehicle, and placed him in handcuffs. (Id.) The deputies explained that the vehicle was stopped because Plaintiff Robbins was wearing red. (Id.) Perez was stripped to his boxers and left exposed on the side of the street. (Id.) Neither Perez nor Plaintiff Robbins were taken to jail or cited. (Id.)

Approximately one month later, Plaintiff Robbins was driving with his fiancé, Plaintiff Hicks and her two children. (FAC ¶ 11.) Deputies with the Sting Unit conducted a traffic stop with guns drawn. (Id.) Plaintiff Robbins was taken out of the vehicle, searched, and placed in handcuffs. (Id.) The children were made to exit the vehicle and it was searched. (Id.) Plaintiff Robbins was released with a verbal warning that the Sting Unit deputies will find something. (Id.)

In late September or early October of 2016, Joshua Langford was arrested and had keys that belonged to Plaintiff Robbins. (FAC ¶ 12.) Sting Unit deputies contacted Plaintiff Robbins and told him to come to the scene to pick up his keys. (Id.) When Plaintiff Robbins arrived at the scene, deputies refused to give him his keys; and he was told that the keys would be dropped at his residence later that evening. (Id.) Instead of dropping off the keys, deputies forcibly entered his home, placed Plaintiff Robbins in handcuffs, and searched his residence. (Id.) Plaintiff Robbins was eventually let go. (Id.)

In January of 2017, Plaintiffs Robbins, Hicks, Hicks children, and three other individuals were in a vehicle being driven by one of the other individuals. (FAC ¶ 13.) Deputies from the Sting Unit took Plaintiff Robbins from the vehicle with guns drawn. (Id.) All the occupants were ordered out of the vehicle. (Id.) Deputies shouted expletives at Plaintiff Hicks when she complained about the harassment. (Id.) There was no citation given, only a promise that eventually Plaintiff Robbins will be caught with something. (Id.)

In March of 2017, Sting Unit deputies entered Plaintiffs Robbins and Hicks residence without a warrant or probable cause with guns drawn. (FAC ¶ 14.) Plaintiff Robbins was taken outside and slammed into a wall. The residence was searched and nothing was found. (Id.) Deputies left promising that they will find something to put Plaintiff Robbins away for a long time. (Id.)

In late March or early April of 2017, the Sting Unit forcibly entered Plaintiffs Robbins and Hicks apartment with guns drawn. (FAC ¶ 15.) Deputies explained that they believed automatic weapons were in the residence but none were found. (Id.)

Around June 30, 2017, Sting Unit deputies came to the residence of Plaintiffs Robbins and Hicks. (FAC ¶ 16.) When Plaintiff Robbins opened the door a gun was pointed at this head. Defendant Gallo, pointing a weapon at Plaintiff Robbins face stated, "You know what time it is." (Id.) Deputies grabbed Plaintiff Robbins and he was placed in handcuffs. Deputies shouted orders at Plaintiff Hicks and her children. (Id.) Defendant Robbins was arrested and was charged with many offenses. (Id.) Those charges were later dropped by the Stanislaus County District Attorney's Office. (Id.)

On July 1, 2017, while Plaintiff Robbins was confined in the county jail, two deputies from the Sting Unit went to Plaintiffs Robbins and Hicks residence and knocked on the door. (FAC ¶ 17.) When they did not receive an answer they attempted to open the door. (Id.) The two officers entered the residence through a window and remained inside for a lengthy period of time, eventually leaving without anything. (Id.)

On August 8, 2017, Plaintiff Robbins returned home from county jail. (FAC ¶ 18.) On August 9, 2017, deputies from the Sting Unit entered the residence of Plaintiffs Hicks and Robbins and arrested Plaintiff Robbins. (Id.)

Plaintiffs' first cause of action alleges the Defendant Gallo illegally searched and permitted the illegal search of the residence in violation of the Fourth Amendment. (FAC ¶ 20.)

Plaintiffs' second cause of action alleges that high ranking County officials knew or reasonably should have known of the repeated acts of unconstitutional searches by the deputies. (FAC ¶ 26.) Despite having such notice, the officials "approved, ratified, condoned, encouraged, sought to cover up, and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violation" by the deputies of illegally searching Plaintiffs' residence. (Id. ¶ 27.)

**IV.**

**DISCUSSION**

Defendant Gallo moves to dismiss the first amended complaint against him on the ground that the only factual allegation against him in the first amended complaint is that he arrested Plaintiff Robbins at gunpoint which is insufficient to support a constitutional claim under any theory. Defendant County moves to dismiss the first amended complaint on the ground that Plaintiffs have merely recited the elements of a cause of action without any factual support.

Plaintiffs oppose the motion on the ground that they have alleged they have consistently been the victims of harassment by the Sting Unit of whom they believe Defendant Gallo is the ring leader. Plaintiffs claim that they have alleged that Defendant Gallo and another deputy climbed through the window of their apartment. Plaintiffs argue that Deputy Gallo can be held liable for the violation of their Fourth Amendment rights because he was an integral participant

1 of the alleged constitutional violation. Further, Plaintiffs contend that the factual allegations regarding the harassment suffered at the hands of deputies is sufficient to plead notice of the defects in training which resulted in unlawful use of "harassment, convert, and intimidation techniques to search citizens." (Opposition 5, ECF No. 13.) Plaintiffs further argue that they have pleaded deliberate indifference by the County caused the deprivation of Plaintiffs' right to be free from unreasonable search and seizure.

Defendant Gallo replies that the only legal claim against him is based on the illegal search of the residence on July 1, 2017. However, the complaint references two unidentified deputies who entered the residence and makes no reference as to him. Therefore, he contends that the complaint fails to state a claim against him.

Defendant County replies that the the first amended complaint makes numerous allegations regarding unnamed deputies but omits any facts to support a Monell claim. Defendant County argues that the boilerplate recitations of the elements of a cause of action without factual support are insufficient to state a claim.

**A.     Defendant Gallo**

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979)). There is no respondeat superior liability under section 1983, and therefore, each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. 662, 677 (2009). To state a claim under section 1983, Plaintiffs must demonstrate that each defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . .' " Terry v. Ohio, 392 U.S. 1, 8 (1968). The Constitution does not forbid all searches and seizures, but unreasonable searches and seizures. Terry, 392 U.S. at 9. "[E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." Michigan v. Tyler, 436 U.S. 499, 506 (1978).

The first amended complaint alleges that on July 1, 2017, two unidentified deputies entered and searched Plaintiffs residence while no one was home. (FAC ¶ 17.) Plaintiffs state in the first cause of action that "Defendant GALLO and DOES 1-25" illegally searched and permitted the illegal search. The Court need not accept as true legal conclusions couched as factual allegations. Iqbal, 665 U.S. at 678. It is unclear whether Plaintiffs seek to hold Defendant Gallo liable because he was involved in the search itself, which is contradicted by the factual allegation that two unidentified officers searched the residence, or because he permitted the illegal search.

To the extent that Plaintiffs seek to hold Defendant Gallo liable because they believe he is the "ringleader" of the Sting Unit as alleged in the opposition to the current motion, Plaintiffs' first amended complaint only alleges that Defendant Gallo was involved in the incident around June 30, 2017, when Sting Unit deputies came to Plaintiffs residence and Defendant Gallo arrested Plaintiff Robbins at gun point. (FAC ¶ 16.)

Plaintiff's complaint fails to allege any facts by which the Court can reasonably infer that Defendant Gallo was involved in the illegal search alleged to have occurred on July 1, 2017. Plaintiffs have failed to state a cognizable claim against Defendant Gallo and the Court recommends that Defendant Gallo's motion to dismiss be granted

**B.     Defendant County of Stanislaus**

Plaintiffs argue that they have pled multiple instances where they were pulled over by the Sting Unit deputies and searched or their residence was searched without probable cause to support their municipal liability claim. Plaintiffs' theory of liability against Defendant County is

based upon municipal liability under Monell. Under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978), "a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor -- in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." A municipality can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. at 694. "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.' " Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001) (quoting Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992)).

A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008). A "custom" is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Los Angeles Police Protective League v. Gates, 907 F.2d 879, 890 (9th Cir. 1990).

To impose liability against Defendant County here, Plaintiffs must establish: (1) that they possessed a constitutional right of which they were deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiffs' constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." City of Canton (Canton) v. Harris, 489 U.S. 378, 389–91 (1989). The Ninth Circuit has held that "a local government may also be held liable under § 1983 for acts of 'omission,' when such omissions amount to the local government's own official policy. Clouthier v. County of Contra Costa, 591 F.3d 1232, 1249 (9th Cir. 2010) (citing Cabrales v. County of Los Angeles, 864 F.2d 1454, 1461 & n.2 (9th Cir. 1988)).

A plaintiff who sets forth a Monell claim against an entity defendant must show that the entity acted with deliberate indifference to the constitutional rights of the plaintiff in adhering to a policy or custom or by acts of omission. See Castro v. County of Los Angeles, 833 F.3d 1060,

1068-69 (9th Cir. 2016) (quoting Canton, 489 U.S. at 392); Clouthier, 591 F.3d at 1249. The Ninth Circuit has held that an objective standard of notice applies to Monell claims. See Castro, 833 F.3d at 1076. The objective deliberate indifference standard is met when a "plaintiff [ ] establish[es] that the facts available to [entity] policymakers put them on actual *or constructive notice* that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens." Id. (quoting Canton, 489 U.S. at 396) (emphasis added). Municipal liability cannot be premised on respondeat superior and it is not sufficient for a plaintiff to merely point to something that the city could have done to prevent the incident. Clouthier, 591 F.3d at 1250 (citing Canton, 489 U.S. at 392).

Since Iqbal, courts have rejected conclusory Monell allegations that lack factual content from which one could plausibly infer Monell liability. See e.g., Rodriguez v. City of Modesto, 535 Fed. App'x 643, 646 (9th Cir. 2013) (unpublished) (affirming district court's dismissal of Monell claim based only on conclusory allegations and lacking factual support); Via v. City of Fairfield, 833 F.Supp.2d 1189, 1196 (E.D. Cal. 2011) (collecting cases). In AE ex rel. Hernandez v. Cnty of Tulare, 666 F.3d 631, 637 (9th Cir. 2012), the Ninth Circuit held that pleadings in a case involving Monell claims are subject to the standard set forth in Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011). In Starr, the Ninth Circuit held that allegations in a complaint cannot simply recite the elements of a cause of action, "but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr, 652 F.3d at 1216. The allegations must also plausibly suggest an entitlement to relief, "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Id.

1. Unconstitutional Search Policy

Plaintiffs' second cause of action alleges that "high-ranking County of Stanislaus officials, including high-ranking sheriff deputies supervisors and DOES 26-50, and/or each of them, knew and/or reasonably should have known about the repeated acts of unconstitutional searches by Stanislaus County sheriff deputies." (FAC ¶ 26.) "Despite having such notice, Plaintiffs are informed and believe and thereon allege that the County of Stanislaus and DOES

26-50, and/or each of them, approved, ratified, condoned, encouraged, sought to cover up, and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violation by Stanislaus County Sheriff Deputies, which brought about, GALLO and DOES 1-25 unlawfully searching the residence of HICKS and ROBBINS." (FAC ¶ 27.) Plaintiffs allege that "as a result of the deliberated indifference, reckless and/or conscious disregard of the misconduct by defendants, GALLO and DOES 1-25, and/or each of them, defendants COUNTY OF STANISLAUS and/or DOES 1-26 ratified and encourage these officers to continue their course of misconduct." (FAC ¶ 28.) Such conclusory allegations that merely recite the elements of the cause of action are insufficient to state a cognizable claim. Iqbal, 556 U.S. at 678.

While Plaintiffs' allege that supervisors have notice of such violations, the complaint is devoid of any factual allegations by which the Court can infer such notice. See Starr, 652 F.3d at 1216 (complaint specifically alleges that sheriff was provided notice in reports of systematic problems in the county jails that resulted in the constitutional injuries).

Further, to the extent that Plaintiffs seek to establish a cause of action based upon ratification of the actions of the Sting Unit deputies, to show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.' " Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) (quoting City of St. Louis, 485 U.S. at 127). "We have found municipal liability on the basis of ratification when the officials involved adopted and expressly approved of the acts of others who caused the constitutional violation." Trevino v. Gates, 99 F.3d 911, 920 (9th Cir. 1996). Ratification generally requires more than acquiescence. Sheehan v. City and County of San Francisco, 743 F.3d 1211, 1231 (9th Cir. 2014). There are no factual allegations to support the claim that the County "approved, ratified, condoned, encouraged, sought to cover up, and/or tacitly authorized" the conduct of the Sting Unit.

Plaintiffs have failed to state a cognizable claim against the County based on an unconstitutional policy of illegal searches.

2. Failure to Train

Plaintiffs further allege "defendant COUNTY OF STANISLAUS and DOES 26-50

and/or each of them, were on notice of the Constitutional defects in their training of Stanislaus Deputy Sheriffs, including, but not limited to unlawfully using harassment, convert[2] and intimidation techniques to unlawfully search citizens." (FAC ¶ 29.) Initially, the Court notes that using harassment and intimidation techniques to unlawfully search citizens is not the conduct that is alleged to have occurred in the July 1, 2017 incident where officers are alleged to have entered and searched the unoccupied residence without a warrant. (FAC ¶ 17.) Plaintiffs allege multiple incidents where Plaintiffs Robbins and Hicks had contact with Sting Officers.

In August 2016, Plaintiff Robbins was riding in a vehicle that was stopped. (FAC ¶ 10.) Officers approached with guns drawn and Plaintiff was taken out of the vehicle and placed in handcuffs. (Id.)

About a month later, Plaintiff Robbins was driving with Plaintiff Hicks and a traffic stop was conducted at gun point. (FAC ¶ 11.) Plaintiff Hicks and the car were searched. (Id.) There is no allegation that this stop was without probable cause or a warrant.

In early September or late October 2016, deputies stopped by Plaintiffs residence and forcibly entered the home, handcuffing Plaintiff Robbins and searching the residence. (FAC ¶ 12.) There is no allegation that this search was conducted without a warrant.

In January 2017, Plaintiffs Robbins and Hicks were in a vehicle being driven by another individual that was pulled over and all occupants were ordered out of the vehicle. (FAC ¶ 13.) There is no allegation that the stop was without reasonable suspicion or that any search was involved.

In March of 2017, Sting Unit deputies entered Plaintiff's home with guns drawn without a warrant or probable cause and searched the residence. (FAC ¶ 14.)

In late March or early April 2017, the Sting Unit entered the residence with guns drawn and explained that they believed there were automatic weapons in the residence. (FAC ¶ 15.) There is no allegation that this search was conducted without a warrant.

On June 30, 2017, Sting Unit deputies came to the residence and arrested Plaintiff

---

[2] The Court assumes that Plaintiff means "covert" in this instance.

11

Robbins at gun point for many offenses. (FAC ¶ 16.) The charges were eventually dropped. (Id.) There is no allegation that this arrest was without a warrant.

On August 9, 2017, after Plaintiff Robbins returned home from county jail, the Sting Unit entered the residence and arrested Plaintiff Robbins. (FAC ¶ 18.) There is no allegation that this arrest was without a warrant or that any search occurred.

"[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick v. Thompson, 563 U.S. 51, 61 (2011). The city's "policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution." Connick, 563 U.S. at 61-62 (quoting Canton, 489 U.S., at 388).

In this instance, the Court finds that the first amended complaint fails to allege any facts sufficient to state a claim for failure to train. As discussed above, there are no allegations sufficient to infer that the County was on notice of any unconstitutional conduct by the Sting Unit. Further, viewing the allegations in the complaint, the Court cannot reasonably infer that the County's failure to train resulted in a policy of using harassment and intimidation techniques to unlawfully search citizens. While there is a single incident in which the residence is alleged to have been searched without a warrant or probable cause, the majority of the contacts with the Sting Unit alleged in the complaint do not specifically allege that they were conducted without probable cause and without a warrant. Further, not all of the incidents alleged involved a search. (FAC ¶¶ 13, 18.)

Although, Plaintiffs allege that deputies have guns drawn on many instances, the Court cannot find that this alone would support the failure to train claim given that the allegations in the complaint include that officers believed the Plaintiff Robbins was in possession of automatic weapons. (FAC ¶ 15.) The facts alleged in the complaint are generally consistent with high risk police enforcement. Generally, Plaintiffs have alleged that initial police contact occurs at gun point and Plaintiff Robbins has been placed in hand cuffs. The Court finds that Plaintiffs have

failed to state a claim for failure to train.

The Court recommends that Defendant County's motion to dismiss be granted.

### C. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). In this instance, the Court finds that Plaintiff may be able to allege additional fact to correct the deficiencies in the pleading. Accordingly, the Court recommends that Plaintiff should be granted leave to file an amended complaint.

### D. Identity of Defendant Gallo

Plaintiffs filed the original complaint naming Joseph Gallo. (ECF No. 1.) In the first amended complaint, Plaintiffs changed the caption to Christopher Gallo, but the body of the complaint named Joseph Gallo. (ECF No. 4.) On October 17, 2017, an order issued notifying Plaintiffs that Defendant Gallo was inconsistently named in the first amended complaint. (ECF No. 7.) Plaintiffs should be required to correct Defendant Gallo's name in any amended complaint.

## V.

## RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants County of Stanislaus and Gallo's motion to dismiss be GRANTED;
2. Plaintiffs be GRANTED leave to file a second amended complaint; and
3. Plaintiffs be required to properly identify Defendant Gallo in any amended complaint.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28

U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 10, 2018**

_____
UNITED STATES MAGISTRATE JUDGE